IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERARDO LOPEZ-VEGA,** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 2:24-cv-02677 |
| **CORRECTIONAL OFFICER SGT. JENKINS,** *et al.*, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                                                                          **November 5, 2025**

**MEMORANDUM**

     This case is before this Court on Defendant Shukriya Jenkins' Motion to Dismiss ("Motion") for untimely service of process. ECF No. 8. Plaintiff did not serve Jenkins[1] with process until 461 days after filing the Complaint. Though he did attempt to locate Jenkins and serve process initially, he has outlined no efforts to serve Jenkins for over 320 days, despite Plaintiff's counsel's active litigation against Jenkins in another matter for the entire period between his initial efforts and when he finally served Jenkins. For these reasons and the reasons set forth below, the Court declines to exercise its discretion to excuse Plaintiff's lack of diligence through a grant of an extension of time. The court therefore grants Defendant's Motion.

**I.   Background**

     Plaintiff Gerardo Lopez-Vega was incarcerated at the George Hill Correctional Facility (the "Facility") when he was brutally assaulted by eight inmates. Compl. ¶¶ 1, 13–17, ECF No. 1. He

---

[1] Shukriya Jenkins, who was served process, is a female. Def.'s Mem. Supp. Mot. Dismiss, ECF No. 8 at 3. The Complaint identifies CO Jenkins as a male. *See, e.g.*, Compl. ¶¶ 13 ("Plaintiff immediately contacted Jenkins to tell **him** that he was fearful for his life . . . .") (emphasis added), 16 ("Jenkins would only tell plaintiff that **he** 'would look into it[]' . . . .") (emphasis added).

1

alleges that prison staff knew he was homosexual and therefore at high-risk for inmate-on-inmate assault. *Id.* ¶ 11. Lopez-Vega expressed fear for his life on multiple occasions. *See, e.g.*, *id.* ¶ 13. He asked CO Sergeant Jenkins to be transferred to protective custody and filed multiple grievances pleading for the same; his requests went unaddressed. *Id.* ¶¶ 13–16. On June 20, 2022, eight inmates assaulted Lopez-Vega for over fifteen minutes until he was able to run away from his attackers and bang on a door until a CO arrived. *Id.* ¶¶ 13–18. Lopez-Vega alleges that Jenkins and Unknown COs watched the assault, either physically or by surveillance camera, "and either encouraged the beating of plaintiff, and/or did nothing to prevent, protect or intervene in the attack and assault." *Id.* ¶¶ 23–24.

On June 18, 2024, Plaintiff Gerardo Lopez-Vega filed the Complaint against Jenkins and Unknown COs, raising three counts: (I) deliberate indifference to safety/failure to protect under 42 U.S.C. § 1983; (II) failure to intervene under 42 U.S.C. § 1983; and (III) intentional infliction of emotional distress. ECF No. 1. On June 21, 2024, Plaintiff attempted to serve Jenkins at the Facility but learned Jenkins' employment had been terminated. Pl.'s Opp. Mot. Dismiss, ECF No. 9 at 2. On June 26, 2024, Plaintiff's counsel emailed Jack Larkin, the solicitor for Delaware County, asking him to waive service on Jenkins' behalf. *Id.* at 12 (Ex. A). On June 27, 2024, Larkin declined, stating he had to obtain Jenkins' consent to waive service and that he would start the process. *Id.* at 14–15 (Ex. B). On July 22, 2024, Plaintiff's counsel again emailed Larkin seeking confirmation that he would indemnify and provide a defense for Jenkins. *Id.* at 14. On the same day, Larkin replied that he was "still trying to hunt the guy down" and would try to respond by the following day. *Id.*

On September 13, 2024, "Plaintiff filed a petition to have an alias summons issued and to have the Delaware County Solicitor's office issue [Jenkins'] last known address." ECF No. 9 at 3;

2

*see also* ECF No. 4 (the "Petition"). On November 6, 2024, the Court granted the Petition. *Id.*; ECF No. 5.

Meanwhile, on September 16, 2024, after Plaintiff's counsel emailed Larkin a subpoena for Jenkins' address, and Larkin replied to the email with Jenkins' last known address on the same day. *See* ECF No. 8 at 5 & 11 (Ex. 2). On October 29, 2024, Plaintiff's counsel emailed Larkin again seeking Jenkins' address. *Id.* at 8 & 15 (Ex. 3). On the same day, Larkin directed Plaintiff's counsel to his September 16, 2024, email, and Plaintiff's counsel responded that he had "absolutely no email from [Larkin] on September 16th! Please resend!" *Id.* at 14. On October 30, 2024, Larkin replied, attaching the September 16 email chain, which included Jenkins' last known address. *Id.* Plaintiff unsuccessfully attempted service four times between November 1, and 5, 2024. ECF No. 9 at 17 (Ex. C).

On November 8, 2024, after the Court granted the Petition, Plaintiff's counsel forwarded the Court's Order to Larkin. ECF No. 8 at 19 (Ex. 4). Larkin replied that he had already provided Jenkins' address twice and attached both email chains, which included Jenkins' address. *Id.* Yet, Plaintiff's counsel contends that Larkin first provided Plaintiff's counsel with Jenkins' last known address on November 8, 2024. ECF No. 9 at 3.

On November 18, 2024, Plaintiff's counsel again asked Larkin to waive service and stated he would be filing a petition for substitute service and would ask the County to pay all expenses related to that service. ECF No. 8 at 22 (Ex. 5). Larkin replied the same day explaining the County is not a party to the case and could not waive service on Jenkins' behalf because Jenkins was no longer an employee, and that Plaintiff could not obtain costs of service from the County. *Id.* at 21. Plaintiff's counsel did not file a petition for substitute service.

3

While Plaintiff's counsel was purportedly trying to locate Jenkins, he was also actively litigating an unrelated matter against her on behalf of an individual incarcerated at the Facility. *See Freeman v. Lt. Moore*, No. 2:23-cv-02655-JS (E.D. Pa.). On August 20, 2024, an attorney entered his appearance on behalf of Jenkins. ECF No. 8 at 10 (Ex. 1). Jenkins' attorney waived service on her behalf in *Freeman* and moved to dismiss the case on the same day. Mot. Dismiss, ECF Nos. 45, 46, *Freeman*, No. 2:23-cv-02655-JS.[2] On September 5, 2024, Plaintiff's counsel filed an Opposition in response to the Motion to Dismiss in *Freeman*. Opp. Mot. Dismiss, ECF No. 47, *Freeman*, No. 2:23-cv-02655-JS. A further review of the *Freeman* docket shows Plaintiff's counsel conferred with Jenkins' counsel for the *Freeman* matter on or before April 3, 2025, when they filed a Joint Rule 16 Status Report. *See* Status Report, ECF No. 53, *Freeman*, No. 2:23-cv-02655-JS.

Plaintiff's counsel seemingly did not contact Jenkins' counsel for the *Freeman* matter to determine her location in the 398 days between his entry of appearance in *Freeman* and Plaintiff's counsel's service of process on Lopez-Vega's behalf. On September 22, 2025, Plaintiff's counsel deposed Jenkins in *Freeman* and served process for this matter then. ECF No. 9 at 4; *id.* at 19 (Ex. D).

## II.   Legal Standard

Under Rule 4 of the Federal Rules of Civil Procedure, a plaintiff must serve process within 90 days after filing the complaint. Fed. R. Civ. P. 4(m). But if the plaintiff shows good cause for his failure to serve process within 90 days, "the court must extend the time for service for an appropriate period." *Id.* To determine whether to extend time for service under Rule 4(m), courts conduct a two-step inquiry. *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020). First, if good cause

---

[2] Jenkins attached her counsel's entry of appearance in *Freeman* to her Motion in this case. ECF No. 8 at 10 (Ex. 1). A review of the publicly available docket establishes Plaintiffs' counsel's other litigation activity in *Freeman* set forth herein.

exists for the failure to effect timely service, the court must extend the time for service. *Id.* Second, absent good cause, the court must decide whether to exercise its discretion to extend time for service or to dismiss the complaint. *Id.*

### III. Discussion

Plaintiff filed his Complaint on June 18, 2024, ECF No. 1, and sought this Court's assistance locating Jenkins on September 13, 2024, through his Petition, ECF No. 4. Under Rule 4(m)'s 90-day time limit, Plaintiff had until September 16, 2024, to serve process. This Court acknowledges, however, that by granting Plaintiff's Petition on November 6, 2024, it impliedly extended the time for service. *See* ECF No. 5; *see also Beautyman v. Laurent*, 829 F. App'x 581, 584 (3d Cir. 2020) (defendant suffered no prejudice by court's failure to set a specific time period for service because he was served within 16 days of order impliedly extending time). While the Court did not set a specific deadline for service, it is unreasonable for Plaintiff's counsel to believe he had unlimited time or could wait 320 days after this Court's grant of the Petition without moving for additional time (or making any efforts to effect service in that time).

#### A. Plaintiff's Counsel Has Not Established Good Cause.

To establish good cause, which would require the court to allow more time to serve process, the party seeking additional time must show "good faith . . . and some reasonable basis" for not serving process within 90 days of filing the Complaint. *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995), *cert. denied*, 519 U.S. 815 (1996). Courts ask whether the plaintiff's reasons for not complying with the time limit establish good cause. *Id.* In determining whether good cause exists, courts consider three factors: "(1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether the plaintiff moved for an enlargement of time to serve." *Id.* (citation omitted); *see also Woodhouse v. Gray*, No. 20-5086, 2023 WL 12023031, at *1 (E.D. Pa. Oct. 10, 2023) (citation omitted).

5

Here, Plaintiff's counsel asserts it was "impossible to serve defendant Jenkins except by in-person personal service," which he accomplished at Jenkins' deposition on September 22, 2025. ECF No. 9 at 9. The Court finds this unpersuasive. Before the time period to serve expired, Jenkins' attorney in *Freeman* entered his appearance and waived service for her in that matter. Plaintiff's counsel did not ask if he would do the same for this case at that time, nor did he ask him for her contact information, even after he was unable to effect service on November 5, 2024, and after Larkin reiterated that he could not waive service on Jenkins' behalf on November 18, 2024.

Plaintiff's contention that it was impossible to locate Jenkins or serve process, despite having contact information for an attorney who received her consent to waive service on her behalf in *Freeman*, simply does not establish good faith or a reasonable basis for his taking over 450 days to serve Jenkins. It also does not explain why Plaintiff's counsel did not move for substitute service when he contemplated doing so at least as early as November 18, 2024. *See* ECF No. 8 at 22 (Ex. 5). Additionally, though Plaintiff's counsel contends that "numerous attempts to research and find other information regarding the whereabouts of Sgt. Jenkins were unsuccessful," he does not explain what those attempts consisted of after November 5, 2024, or why none of them involved contacting Jenkins' attorney in *Freeman*. *See* ECF No. 9 at 4.

This Court also finds the defendant has, in some respect, been prejudiced by the delay; however, this element is not dispositive. In determining prejudice to the defendant stemming from delayed service, the question is whether the defendant's ability to defend herself on the merits is impaired. *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997); *see also Bailey v. Harleysville Nat'l Bank & Trust Co.*, No. Civ.A.04-1541, 2005 WL 174843, at *2 (E.D. Pa. Jan. 26, 2005) (exercising discretion to grant extension to pro se plaintiff where defendants' ability to defend on the merits was not harmed by 17-day delay in service). Jenkins asserts she will be prejudiced because she has

enlisted in the military and is in basic training, where she will be out of contact through the end of the year. ECF No. 8 at 8. She may also be "difficult or impossible to contact" after she completes basic training while stationed outside the Commonwealth or deployed. *Id.* Plaintiff argues Jenkins has not been prejudiced. ECF No. 9 at 9. While Jenkins would likely face challenges defending herself in this action while serving in active military service—a change of circumstances that occurred well after the time limit for service expired and well after this Court granted Plaintiff's Petition—it is not clear Jenkins' ability to defend the merits of the action will be affected by the mere passage of time. Nonetheless, the Court notes that the allegations in the Complaint occurred over three years ago.

Finally, the Court considers whether Plaintiff moved for an enlargement of time. As noted above, the Court implicitly granted an extension on November 6, 2024, when it granted the Petition. However, in the 320 days that passed between that Order and Jenkins' receipt of service, Plaintiff's counsel did not seek additional time from this Court.

Accordingly, this Court concludes Plaintiff's counsel did not establish good cause for his failure to comply with Rule 4(m).

### B. Plaintiff Is Not Entitled to a Discretionary Extension of Time

Even absent good cause, Rule 4(m) permits the Court to exercise its discretion to grant additional time for service. The Court has carefully considered whether such relief is warranted here. It recognizes that dismissal will, as a practical matter, bar Plaintiff from refiling. The Court further acknowledges the gravity of the allegations concerning deliberate indifference to inmate safety. The Court does not take lightly the consequence of depriving a litigant of an opportunity to pursue a potentially meritorious civil rights claim.

However, the Court feels constrained due to the egregious failings by Plaintiff's counsel. The Federal Rules require diligence in bringing claims before the Court so that defendants are not

7

forced to defend stale actions. See *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 197 (3d Cir. 1998) (The rules are "meant to be applied in such a way as to promote justice," which favors deciding cases on the merits, but they also "require that the merits of a dispute be presented in a timely fashion."). The Third Circuit has held that "half-hearted efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995) (citation modified). It has further cautioned that "the lesson to the federal plaintiff's lawyer is not to take any chances. Treat the [90] days with the respect reserved for a time bomb." *Id.* (citation omitted). Here, more than fifteen months passed after the Court impliedly extended the service deadline, during which time Plaintiff's counsel made no apparent effort to contact Jenkins' known attorney, pursue substitute service, or seek an extension. "[W]hile the running of the statute of limitations is a factor supporting the discretionary granting of an extension of time to make service under Rule 4(m)," the court retains discretion to deny an extension of time, even if the statute of limitations has run. *Boley*, 123 F.3d at 759 (emphasis removed); *see also* Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action . . . .").

    The Court is mindful that equitable considerations sometimes favor leniency when dismissal would end a case, but the record reflects not an isolated oversight, but a prolonged and unexplained lapse in diligence. Plaintiff's counsel neglected to pursue a clearly available avenue for locating Jenkins through her counsel with whom he conferred on another matter in which she was a defendant;[3] did not follow through on filing a motion for substitute service as he

---

[3] The Court notes that Plaintiff's counsel did not effect service for: 461 days after filing the Complaint; 398 days after Jenkins' attorney entered his appearance and waived service on her behalf in *Freeman*; 320 days after this Court

contemplated doing; and failed to ask this Court for additional time even though he claims it was "impossible" to serve Jenkins for 461 days after filing the Complaint. Accordingly, although the Court appreciates the seriousness of Plaintiff's claims and regrets the harshness of this result, it cannot conclude that equity justifies further extension in the face of such an extensive, unexplained delay. The Court therefore declines to exercise its discretion to extend the time for service.

An appropriate Order follows.

---

implicitly granted an extension of time (albeit without imposing a specific deadline); 308 days after threatening to file a motion to substitute service; and 172 days after submitting a joint Rule 16 status report in *Freeman*. It seems clear to this Court, based on all the circumstances and Plaintiff's counsel's failure to explain any steps taken to locate Jenkins after November 18, 2024, that Plaintiff's counsel did not exercise diligence, let alone make **reasonable** efforts to serve process in nearly a year, when his efforts apparently stopped. *See* ECF No. 8 at 22 (Ex. 5) (showing the last attempt to locate Jenkins occurred on November 18); ECF No. 9 at 3–4 (outlining attempts to locate and serve Jenkins but failing to explain any specific attempts taken after service was unsuccessful on November 5, 2024, until September 22, 2025).